UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

TIME WARNER CABLE OF NEW YORK CITY,
a division of Time Warner
Entertainment Company, L.P.,

                Plaintiff,

                              REPORT AND RECOMMENDATION

    - against -                02-CV-1805 (CPS)(MDG)

JOSEPH SCHULMANN,

                Defendant.
- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Plaintiff, Time Warner Cable of New York City ("TWCNYC" or "plaintiff"), brought this action against defendant Joseph Schulmann ("Schulmann" or "defendant") for violations of Title 47 of the United States Code. In its complaint, plaintiff alleges that the defendant intercepted and received plaintiff's private cable telecommunications signals without plaintiff's authorization through the use of a compatible bootleg cable television decoder, in violation of sections 553(a)(1) and 605(a) of Title 47.

    After defendant failed to appear or otherwise defend in this action, the Clerk of the Court noted entry of default against the defendant on December 19, 2002. Ct. doc. 4. By order dated December 30, 2002, the Honorable Charles P. Sifton, entered a default judgment against defendant and referred this case to me for report and recommendation on the issue of damages. Ct. doc.

4.

For the following reasons, I respectfully recommend that plaintiff be awarded statutory damages against Schulmann pursuant to 47 U.S.C. § 605(e)(3)(C)(I) and attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) in the amounts set forth below.

FINDINGS OF FACT

The undisputed facts pertinent to determination of this motion are set forth in the Complaint ("Compl.") (ct. doc. 1); the February 18, 2003 affidavit of Thomas Allen, the Director of Signal Security for plaintiff ("Allen Aff.") (attached to Plaintiff's Memorandum of Law in Support of Application for Award of Damages Against Defendant Joseph Schulmann ("Pl.'s Mem.")) (ct. doc. 6); and the undated Affirmation of Michael D. Cassell, counsel for plaintiff ("Cassell Aff.") (attached to Pl.'s Mem.) The defendant did not file any submissions.

TWCNYC is a cable television operator which has been awarded franchises by the City of New York to construct, operate, and maintain cable television systems within parts of Queens, Kings, and New York counties. Compl. ¶ 6; Allen Aff. ¶ 2. TWCNYC offers cable television programming services to subscribers at different monthly charges depending upon the level of service requested. Compl. ¶¶ 7-9; Allen Aff. ¶¶ 3-7. "Basic" service provides enhanced quality reception of broadcast stations as well as a small number of additional programming services. Allen Aff.

¶ 3. "Standard" service is a higher level of service which includes all of the services offered in the Basic service package and other programming, with the exception of premium and Pay Per View services. Id. TWCNYC also offers, at an additional charge, various premium programming services such as Cinemax, Home Box Office, and Showtime. Compl. ¶ 7; Allen Aff. ¶¶ 3, 4. The current cost of subscribing to all of TWCNYC's premium programming channels, not including Pay-Per-View events, is approximately $85.00 per month. Allen Aff. ¶ 4. Pay-Per-View programs typically range in price between $4.00 and $49.99 per selection. Compl. ¶ 15; Allen Aff. ¶ 5. The cost of ordering all Pay-Per-View programs offered in a given month is approximately $400, assuming each program is viewed only once. Allen Aff. ¶ 5.

TWCNYC receives the signals for all its cable television services from orbiting satellites and radio communication towers. Compl. ¶ 10; Allen Aff. ¶ 9. TWCNYC then retransmits the same signals to its subscribers through a network of cable wiring and equipment (the "System"). Compl. ¶ 10. In order to protect its programming services against unauthorized reception, TWCNYC encrypts or "scrambles" the signals. Compl. ¶ 11; Allen Aff. ¶ 9. Scrambling prevents a subscriber from viewing a program he has not paid for. Allen Aff. ¶ 9. TWCNYC provides each subscriber with a device known as a "converter" which converts the signals transmitted over the System into "channels" which can

be viewed on subscribers' television sets. Compl. ¶ 10; Allen Aff. ¶ 8. Each converter contains a "descrambler" or "decoder" to decode scrambled services so that each subscriber receives only the level of programming services he or she selects and purchases. Compl. ¶¶ 11, 12; Allen Aff. ¶¶ 10-12.

TWCNYC alleges that Schulmann purchased and used unauthorized descrambling equipment to intercept plaintiff's premium and Pay-Per-View programming for which defendant neither subscribed nor paid. Compl. ¶¶ 18-22; Allen Aff. ¶¶ 16-19. Plaintiff's claims are based upon the results of an investigation of Teleview/Omega Holdings, L.L.C. - JRC Products, Inc. ("Teleview"), a business located in Elgin, Illinois, that sells "pirate" converter-decoders that enable users to view TWCNYC's premium and Pay-Per-View channels without authorization. Allen Aff. ¶¶ 16-19.

After defendant Schulmann originally subscribed to TWCNYC's service on July 3, 1986, plaintiff provided Schulmann with an authorized converter. Allen Aff. ¶ 24. Defendant presently subscribes to TWCNYC's Standard level of service, plus some additional programming, at an approximate cost of $55.00 per month. Id. Teleview's invoice records indicated that the defendant Schulmann purchased a SSA/2PC/TV86 converter-decoder on April 21, 1992. Allen Aff. ¶ 20; Pl.'s Mem., Exh. D. Defendant exchanged this decoder numerous times, the last of which was on December 15, 1992. Id. Schulmann purchased an additional

SSA/2PC/TV86 converter-decoder from Teleview on April 8, 1993, which was subsequently exchanged for another SSA/2PC/TV86 device on April 16, 1993. Id. The converter-decoders purchased by Schulmann are capable of descrambling TWCNYC encrypted signals in the area of Queens where defendant resides, thereby enabling him to access premium level channels and Pay-Per-View without authorization. Compl. ¶¶ 20-21; Allen Aff. ¶¶ 21- 22.

Plaintiff served Schulmann by leaving process with a person of suitable age and discretion at Schulmann's usual place of abode and mailing a copy to said defendant at this location. Since New York law permits service upon individuals at their usual place of abode, I find that service was properly effectuated upon defendant. See N.Y. Civil Prac. Law and Rules § 308(2). Since Schulmann has not appeared, default is properly entered against him.

## DISCUSSION

### I. Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct. That is, the acts pleaded in the complaint

violated the laws upon which a claim is based and caused injuries as alleged. Au Bon Pain, 653 F.2d at 69-70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Greyhound, 973 F.2d at 159.

The Court must ensure that there is a basis for the damages specified in a default judgment. In determining damages not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives a Court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992); Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines v. Hughes, 308 F. Supp. 678, 683 (S.D.N.Y. 1969), rev'd on other grounds, 409 U.S. 363, 93 S. Ct. 647 (1973)).

II. Determination Of Damages under Title 47

Both sections 553 and 605 of Title 47 prohibit the unauthorized interception and reception of cable programming. Section 553(a)(1) specifies that:

> [n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C.§ 553(a)(1).  Section 605(a) provides that:

> [n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).  In contrast to section 553, which by its terms applies only to transmissions via cable systems, section 605(a) applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions.  <u>International Cablevision, Inc. v. Sykes</u>, 75 F.3d 123, 130, 133 (2d Cir.), <u>cert. denied</u>, 519 U.S. 929 (1996); <u>see also</u> <u>Community Television Sys., Inc. v. Angela Caruso, Michael Caruso, et al.</u>, 284 F.3d 430, 435 (2d Cir. 2002).  Thus, when pay television programming is transmitted over both cable and satellite mediums, both statutes apply, since they are not mutually exclusive despite their overlap.  <u>Id.</u>

Plaintiff's submissions are sufficient to support the inference that defendant violated both sections 553 and 605 of Title 47 by intercepting and receiving plaintiff's cable systems without authorization.  Plaintiff is a cable operator and receives the signals to all of its premium and Pay-Per-View programming channels by transmissions via orbiting satellites and local radio towers.  Compl. ¶ 10; Allen Aff. ¶ 9.  In order to protect against unauthorized reception, plaintiff encrypts or "scrambles" the signals to all programming not purchased by the

subscriber and therefore not authorized to be received.  Compl. ¶
11; Allen Aff. ¶¶ 9-10.  Defendant used a "pirate" device which
enabled him to intercept all of plaintiff's transmissions without
authorization or payment.  Compl. ¶¶ 20-21; Allen Aff. ¶ 25.

Both sections 553 and 605 allow a plaintiff to recover actual
or statutory damages.  Section 553(c)(3)(A)(ii) provides statutory
damages of $250 to $10,000 for "all violations" while section
605(e)(3)(C)(i)(II) authorizes statutory damages of $1,000 to
$10,000 for "each violation."  Plaintiff seeks statutory damages
of $8,820.00 from Schulmann pursuant to section 605(e)(3)(C)(i).
See Pl.'s Mem. at 7-8.  An award of damages under this section is
appropriate since section 605 permits higher damages.[1]  Statutory
damages are appropriate here because of the difficulty in
determining the extent of defendant's unauthorized use with any
degree of accuracy.

Sections 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II) authorize
the court to award statutory damages "as the court considers
just."  47 U.S.C. §§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).  In
exercising its discretion to award damages, a court should
consider "both the nature of the violation in light of the
statutory scheme involved, as well as the particular circumstances
concerning the defendants' actions in this case in determining
damages."  <u>Cablevision Sys. New York City Corp. v. Lokshin</u>, 980 F.

---

[1] Higher enhanced damages are available under section 605(e)(3)(c)(ii).  Plaintiff does not seek such an award here.

Supp. 107, 113 (E.D.N.Y. 1997).

In addition, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. CIV.A.94-6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes, 75 F.3d at 132 (quoting legislative history). The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute. See Lokshin, 980 F. Supp. at 113.

Although plaintiff has elected to recover statutory rather than actual damages, the approximate value of the services stolen is a logical starting point in determining the appropriate amount of damages to award. See Time Warner Cable of New York v. Rivera, No. CIV.A.94-2339 (JS)(SMG), 1995 WL 362429 (E.D.N.Y. Jun. 8, 1995) ($1,500 in damages awarded based on unauthorized premium service intercepted by private individual multiplied by the ten months defendant had converter); Cablevision Systems Corp., v. Maxie's North Shore Deli Corp., No. CIV.A.88-2834 (ASC), 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991) (damages based on number of patrons in defendant bar for specific program multiplied by Cablevision charge for the event and tripled).

Plaintiff has provided information regarding the cost and length of services paid by defendant, as well as the cost of unauthorized services. The unauthorized programming consists of premium service which costs about $85.00 per month, and Pay-Per-

View programming, which costs approximately $400.00 per month for all the events offered in a given month.  Allen Aff. ¶¶ 26-27.  The information before the Court is not sufficient for any determination of when the defendant began unauthorized use of the altered decoders, whether the defendant has continued using the decoders, or how many unauthorized premium and Pay-Per-View programs, if any, the defendant intercepted.  However, since defendant's failure to appear in this action has deprived plaintiff of the opportunity to obtain such information through discovery, this court should award statutory damages based on the incomplete record presented.

Plaintiff seeks statutory damages based on estimated usage.  See Pl.'s Mem. at 7-8.  Plaintiff calculates damages from the dates defendant received the converter-decoders at issue, December 1992 (the last exchange of the first device) and April 1993 (the purchase and exchange date of the second device), until seven years later, because a typical converter-decoder has a useful life of approximately seven years or 84 months.  See id.  Plaintiff multiplies 84 months by the estimated cost per month for services that a user could access with the pirate converter-decoder ($85.00) less the cost of defendant's actual monthly service ($55.00) plus the estimated cost of Pay-Per-View services intercepted ($75.00).  Plaintiff then reduces this number by half, because defendant had a higher level of service than Basic but did not downgrade service after acquiring the converter-decoders, and

-10-

multiplies the total loss by two, because the defendant used two unauthorized devices.  Pl.'s Mem. at 8.

Strict application of plaintiff's formula is inappropriate in this case since damages are sought for usage from a date more than three years before the complaint was filed.  See Carell v. Shubert Organization, Inc., 104 F. Supp. 2d 236, 252 (S.D.N.Y. 2000). Borrowing from analogous New York State statutes and/or the federal Copyright Act, 17 U.S.C. § 507(b), courts in this circuit have held that a three-year limitations period applies to claims by cable companies for violations of sections 553 and 605.  See Entm't by J&J v. 78 Enters., Inc., No. CIV.A.02-8015 (DLC), 2003 WL 1960586, at *1-2 (S.D.N.Y. April 25, 2003); Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., 255 F. Supp. 2d 307, 313-314 (S.D.N.Y. 2003); CSC Holdings, Inc. v Kraut, 169 F. Supp. 2d 115, 117-18 (E.D.N.Y. 2001).

Accordingly, insofar as plaintiff is seeking damages for conduct occurring more than three years before commencement of this action, such a claim is time-barred.  Thus, the appropriate starting date from which statutory damages should be calculated is March 1999 (three years before commencement of this action). Although the useful life of a typical decoder is seven years, see Allen Decl. ¶ 29, using plaintiff's formula and assuming the decoder was in use for eight years (until December 2000), plaintiff is entitled to damages for 21 months of unauthorized use of the first decoder, calculated as follows: ($85 - $55 + 75) x 21

mos. = $2205.00. Schulmann purchased and exchanged the second converter-decoder in April 1993. Again, applying plaintiff's formula for the second decoder and assuming it was used until April 2001, damages for 25 months (March 1999-April 2001) of unauthorized use amount to $2,625.00. Thus, the statutory damages for 46 total months of unauthorized use of both converter-decoders equals $4,830.00.

In sum, I recommend that this Court award statutory damages of $4,830 based on unauthorized use of each decoder from March 1999 until eight years after its acquisition date.

III. <u>Attorneys' Fees And Costs</u>

Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. <u>See</u> <u>Sykes</u>, 997 F.2d at 1009. The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989), <u>cert.</u> <u>denied</u>, 496 U.S. 905 (1990). The reasonable market rate of paralegal and law clerk time are also recoverable. <u>Chambless</u>, 885 F.2d at 1058-59.

A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous

time records.  See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  The reasonable hourly rates should be based on the rates "'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'"  Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.  See Chambless, 885 F.2d at 1059.  The Court in Rotella found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates."  Rotella v. Bd. of Educ. of City of New York, No. 01 CIV. 0434, 2002 WL 59106, at *2-3 (E.D.N.Y. Jan 17, 2002) (citations omitted) (finding that rate of lead counsel in a small firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); see also SEC v. Goren, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks an award of $1,194.00 in attorneys' fees and costs from Schulmann.  Cassell Aff. ¶ 2.  The amount of time spent by the attorneys and paralegals on work relating to the defaulting defendant and their billing rates are summarized below:

| Attorney/ Paralegal | Time | Rate | Amount |
|---|---|---|---|
| DJL | 0.5 | $240.00 | $120.00 |
| MDC | 1.4 | $165.00 | $231.00 |
| SAW | 6.8 | $85.00 | $578.00 |
| RAD | 0.2 | $85.00 | $17.00 |
| JS | 0.8 | $85.00 | $68.00 |

**Total Fees**                                             **$1,014.00**

After reviewing plaintiff's submissions, I find that plaintiff has provided sufficient information to explain the time spent by its attorney staff and that the time spent on this case is reasonable in light of the work completed. I also find the rates sought by plaintiff to be reasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3. Therefore, I recommend that plaintiff be awarded $1,014.00 in attorneys' fees against Schulmann.

Plaintiff also seeks reimbursement of the filing fee and service of process fee pertaining to this matter. The sum incurred totaled $180.00. Cassell Aff. ¶ 16. Since this amount is reasonable, I recommend that the Court award plaintiff costs and fees of $180.00.

## CONCLUSION

For the foregoing reasons, I recommend that the Court award plaintiff Time Warner Cable of New York City statutory damages against defendant Schulmann in the amount of $4,830, plus

attorneys' fees and costs of $1,194.00, for a total judgment of $6,024.00.

Copies of this Report and Recommendation will be sent by overnight mail or electronically to the parties on this date. Any objections must be filed with the Clerk of the Court, with a copy to the undersigned and the Honorable Charles P. Sifton by July 12, 2006. Failure to file objections within the specified time may waive the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated: Brooklyn, New York
June 23, 2006

_____/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE